IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC FUSCO, | ) | Civil Action No. 2:25-cv-1952 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| CITY OF CLAIRTON, | ) | |
| | ) | Electronically Filed |
| Defendant. | ) | |

COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiff, ERIC FUSCO, by and through his attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, ELIZABETH A. TUTTLE, ESQUIRE, MASSIMO A. TERZIGNI, ESQUIRE, and AMANDA N. SHIELDS, ESQUIRE, and files this Complaint in a Civil Action as follows:

JURISDICTION AND VENUE

1. This is an action to redress the deprivation by the Defendant of the Plaintiff's civil rights, and in particular, the right to be free from illegal, invidious and damaging discrimination in his employment, which rights are guaranteed by the Constitution of the United States and the laws and statutes enacted pursuant thereto, and in particular, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. (as amended) ("Title VII") and the Civil Rights Act of 1991 (as amended).  Declaratory relief is sought under, and by virtue of, Title 28 U.S.C. §§2201 and 2202.

2. Jurisdiction of this Honorable Court is founded upon Title 28 U.S.C. §§ 1331 and 1343(3), and by Title 42 U.S.C. §2000e.

3. Venue is proper under 28 U.S.C.A. § 1391(b). All claims set forth herein arose in the Western District of Pennsylvania and the Plaintiff resides in the Western District of Pennsylvania.

4. Pursuant to the violations described herein in Counts I through IV, this Honorable Court is also empowered to exercise pendant jurisdiction over the claims set forth in Count V pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq*.

5. Plaintiff has satisfied all procedural and administrative requirements set forth in Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-5, and in particular:

   a. On or about December 18, 2025, Plaintiff filed a charge alleging discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and said charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC");

   b. Plaintiff received a Notice of the Right to Sue from the Department of Justice dated September 25, 2025; and

   c. Plaintiff's Complaint is timely filed within 90 days of Plaintiff's receipt of the Notice of Dismissal and Right to Sue.

## PARTIES

6. Plaintiff, Eric Fusco, is a Caucasian male individual who resides in Allegheny County, Pennsylvania.

7. Defendant, City of Clairton, is a governmental entity and/or political subdivision of the Commonwealth of Pennsylvania with administrative offices located at 551 Ravensburg Boulevard, Clairton, Pennsylvania 15025.

8. At all times relevant hereto, Defendant was acting though its partners, directors, agents, subsidiaries, officers, employees and assigns acting within the full scope of their agency, office, employment or assignment.

## FACTUAL ALLEGATIONS

9. Plaintiff has been employed by Defendant in the Public Works Department since on or about September 6, 2006. Plaintiff currently holds the position of operations supervisor.

10. Plaintiff is a Caucasian male individual and is married to an African-American female.

11. On or about July 1, 2019, Defendant hired a Caucasian female employee, Penelope Bell ("Bell"), for the position of general laborer in the Public Works Department.

12. Plaintiff believes, and therefore avers, that Ms. Bell did not have, and does not have, the necessary qualifications, training, and experience for the position of general laborer.

13. Furthermore, Ms. Bell did not have, and continues to lack, a commercial drivers' license ("CDL"), which is required to operate some equipment used by the Defendant's Public Works Department.

14. All other general laborers employed by the Defendant prior to Ms. Bell's employment held a CDL at the time that they were hired by Defendant.

15. At the time that Ms. Bell was hired, Plaintiff, along with others in the department, were instructed by multiple members of the Defendant's City Council to treat Ms. Bell more favorably than male employees because she was female.

16. Throughout Ms. Bell's employment with the Defendant, Defendant has failed to reprimand or otherwise discipline Ms. Bell for several actions including, but not limited to:

   a. damaging Defendant's salt truck and plow while on duty;

   b. failing to report an accident in which she was involved while using the Defendant's equipment and while on duty;

   c. denying to the Defendant that she was involved in the aforementioned accident;

   d. failing to properly secure a trailer with asphalt, which caused an incident;

   e. hitting Plaintiff's wife's vehicle with the Defendant's lift truck;

      f.   initiating a verbal altercation with two (2) African-American citizens;

      g.   engaging in sexual relations with another employee while on duty;

      h.   being insubordinate to her superiors, including the Plaintiff; and

      i.   making inappropriate racial comments to the Plaintiff.

17. In or about 2021, Plaintiff was promoted by the Defendant to the position of operations supervisor.

18. Ms. Bell became increasingly hostile toward the Plaintiff for not treating her more favorably than male employees, in that Plaintiff did not assign her to operate certain equipment for which she lacked the necessary skills and training.

19. Despite Plaintiff's continued reports to Defendant that Ms. Bell lacked the skills to safely operate certain equipment, Plaintiff was repeatedly instructed by Defendant to allow Ms. Bell to operate that equipment.

20. In or about October, 2021, Defendant hired an outside agency to train Ms. Bell and two (2) other employees on operating equipment.

21. Approximately two (2) weeks after the start of Ms. Bell's training with the outside agency, that agency also reported to the Defendant that Ms. Bell lacked the necessary skills and qualifications to operate certain equipment.

22. Thereafter, Ms. Bell did not pass the training by the outside agency.

23. In or about February, 2024, Ms. Bell made disparaging posts about the Plaintiff on Facebook.

24. As a result of Ms. Bell's posts, on or about February 26, 2024, Plaintiff held a staff meeting with his department to discuss the issue.

25. At that meeting, Ms. Bell became hostile, leaned over Plaintiff while he was sitting down and began to scream in the Plaintiff's face, which caused her to spit in the Plaintiff's face.

26. Ms. Bell also clapped her hands in front of Plaintiff's face as she yelled.

27. Plaintiff asked Ms. Bell why she was clapping in his face and yelling so closely to him.

28. Ms. Bell responded, "I'm just acting like those black bitches you deal with. If I act like that, maybe you can relate to me."

29. Plaintiff believes, and therefore avers, that Ms. Bell was referencing Plaintiff's wife, who is African-American, and his African-American family members.

30. Plaintiff believes, and therefore avers, that the aforementioned statement by Ms. Bell was a racist statement toward the Plaintiff and/or his family.

31. In the above-described meeting, Ms. Bell also stated that she was protected and could not be fired from her job.

32. Plaintiff believes, and therefore avers, that Ms. Bell was indicating that she was, and is, treated more favorably by the Defendant than male employees and/or African-American employees.

33. Shortly after the above-described meeting, Plaintiff reported Ms. Bell's unacceptable conduct and racially hostile statement, as described hereinbefore above, to the Defendant's mayor.

34. Ms. Bell was not reprimanded or disciplined in any way by Defendant for her statements and/or conduct.

35. On or about June 7, 2024, Plaintiff was called to a meeting with Borough Manager Howard Bednar ("Bednar") and Solicitor Deron Gabriel ("Gabriel").

36. In that meeting, Plaintiff was informed that Ms. Bell filed a complaint against him with the Defendant.

37. At that time, Mr. Gabriel alleged that there was a recording by Ms. Bell of the meeting on February 26, 2024, and that in that meeting the Plaintiff called Ms. Bell "Special Olympics."

38. That allegation was, and is, patently false.

39. Mr. Bednar confirmed that the alleged statement was not audible in the recording.

40. At that time, Plaintiff informed Mr. Gabriel and Mr. Bednar that Ms. Bell did not have Plaintiff's consent to record him.

41. Additionally, Plaintiff made a verbal complaint to Mr. Gabriel and Mr. Bednar of the racial slur made by Ms. Bell in the above-described February meeting.

42. In response, Mr. Gabriel stated that the Defendant wanted the issue to "go away."

43. On or about June 9, 2024, Plaintiff filed a formal complaint with Defendant against Ms. Bell regarding her racial slurs at the February meeting, as described hereinbefore above, and complained of the racially and sexually hostile work environment created by Ms. Bell's conduct and the favorable treatment of Ms. Bell by Defendant.

44. On or about June 7, 2024, Ms. Bell filed a police report alleging that Plaintiff had slashed her tires.

45. That allegation was, and is, patently false.

46. Ms. Bell was interviewed by a police officer at that time that she filed her complaint and that interaction was recorded on the police officer's bodycam.

47. Ms. Bell did not have any evidence that Plaintiff was the individual that slashed her tires.

48. During Ms. Bell's interaction with the police officer, Ms. Bell admitted to having a sexual relationship with another employee while on the job and admitted to recording Plaintiff without his consent on multiple occasions.

49. Plaintiff was then notified of Ms. Bell's statements, as described in Paragraph 48, and reported the statements to the Defendant.

50. Plaintiff also filed a criminal complaint against Ms. Bell for her illegal recordings of Plaintiff without his consent.

51. Thereafter, Defendant's Councilwoman Lee Lasich ("Lasich") and Mr. Gabriel confronted the police officer involved in Ms. Bell's police report and pressured the officer to charge Plaintiff with slashing Ms. Bell's tires, despite lack of evidence.

52. Plaintiff believes, and therefore avers, that Councilwoman Lasich and Mr. Gabriel pressured the police officer to charge him based on: his sex, male, his race and the race of his wife, and/or in retaliation for his complaints of race and sex discrimination and a sexually hostile work environment in the Defendant's Public Works Department.

53. On or about July 31, 2024, Ms. Bell was subjected to a *Loudermill* hearing by the Defendant for her conduct. During that hearing, Ms. Bell initially denied all of the accusations against her.

54. After testimony from other individuals, Ms. Bell then admitted to several accusations, including, but not limited to, engaging sexual relations with another employee while on the job.

55. Defendant, however, did not terminate, reprimand, and/or otherwise discipline Ms. Bell for her conduct.

56. In a letter dated July 31, 2024, Plaintiff's attorney, Gary Matta ("Matta"), Esquire, sent a cease-and-desist letter to the Defendant on Plaintiff's behalf based on the hostile work environment, as described hereinbefore above.

57. In or about August, 2024, Plaintiff made another complaint to Defendant of the sexually and racially hostile work environment.

58. At that time, the mayor responded that he did not believe that Ms. Bell's racial comments, as described hereinbefore above, were racist and that her hostile actions, including, but not limited to, screaming at Plaintiff and clapping in Plaintiff's face, were not of significance because the Plaintiff was a male individual and she was a female individual.

59. Defendant continued to refuse to reprimand and/or terminate Ms. Bell for her conduct, despite Plaintiff's multiple complaints.

60. On or about August 5, 2024, all members of the Plaintiff's department except Ms. Bell signed a written complaint addressed to city officials voicing concerns of the sexually and racially hostile work environment created by Ms. Bell and the illegal recordings made by Ms. Bell.

61. In or about November, 2024, Plaintiff again complained to the Defendant of the sexually and racially hostile work environment in his department.

62. At or about that time, Councilwoman Lasich expressed to Defendant's code enforcement officer that Plaintiff's complaints would be ignored by city council.

63. For the reasons stated hereinbefore above, Plaintiff believes, and therefore avers, that Ms. Bell, a Caucasian female employee that made inappropriate racial comments and had committed the other improper and inappropriate acts described hereinbefore above, was, and is, treated more favorably than the Plaintiff.

64. Plaintiff believes, and therefore avers, that he is treated less favorably by the Defendant based on his sex, male, his race and/or the race of his wife, and/or his complaints of the racially and/or sexually hostile work environment, as described hereinbefore above.

65. As a result of the Defendant's actions, Plaintiff has been adversely affected professionally and emotionally.

## COUNT I:

## TITLE VII – SEX DISCRIMINATION

66. Plaintiff incorporates by reference Paragraphs 1 through 65 as though fully set forth at length herein.

67. Plaintiff was discriminated against based upon his sex in that he was treated in a manner which is different than and disparate to that of female employees and subjected to a hostile work environment based on his sex.

68. As a direct result of the Defendant's discriminatory actions and violations of Title VII of the Civil Rights Act of 1964, and The Civil Rights Act of 1991, the Plaintiff has incurred counsel fees and other costs in pursuing his legal rights.

69. Additionally, the Plaintiff has suffered emotional, psychological, and physical distress, inconvenience, suffering, loss of reputation, humiliation and embarrassment as a direct result of the Defendant's discriminatory conduct as described above.

70. The actions of the Defendant, through its employees, were intentional, willful and deliberate and/or done with reckless disregard for the rights of the Plaintiff.

71. The actions on part of the Defendant are part of a plan, practice or pattern of discrimination which may affect others who are similarly situated to the Plaintiff.

WHEREFORE, Plaintiff requests the following:

a. that the Court enter a judgment declaring the Defendant's actions to be unlawful and violative of the Title VII of the Civil Rights Acts of 1964 and 1991, as amended;

b. that the Court award the Plaintiff compensatory and punitive damages as a result of the Defendant violation of the Civil Rights Act of 1991;

c. that the Court award the Plaintiff pre-judgment and post judgment interest from the date of the discrimination;

d. that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

e. that the Court grant the Plaintiff such additional relief as may be just and proper.

JURY TRIAL DEMANDED

COUNT II:

TITLE VII – SEXUALLY HOSTILE WORK ENVIRONMENT

72. Plaintiff incorporates by reference Paragraphs 1 through 71 as though fully set forth at length herein.

73. As described hereinbefore above, Plaintiff was discriminated against based upon his sex, male.

74. Plaintiff was discriminated against based upon his sex in that he was treated in a manner which is different than and disparate to that of female employees and/or female employees, as described hereinbefore above.

75. Plaintiff was subjected to a sexually hostile work environment in that he was repeatedly harassed by a female employee based on his sex, instructed by Defendant to treat that female employee more favorably than male employees, and treated less favorably than that employee by Defendant based on his sex, male.

76. As described hereinbefore above, Plaintiff made multiple complaints to Defendant of the

harassment by a female employee and the sexually hostile work environment. Despite these complaints, Defendant took no action against that female employee.

77. As a direct result of the Defendant's discriminatory actions and violations of Title VII of the Civil Rights Act of 1964, and The Civil Rights Act of 1991, the Plaintiff has incurred counsel fees and other costs in pursuing his legal rights.

78. Additionally, the Plaintiff has suffered emotional, psychological, and physical distress, inconvenience, suffering, loss of reputation, humiliation and embarrassment as a direct result of the Defendant's discriminatory conduct as described above.

79. The actions of the Defendant, through its employees, were intentional, willful and deliberate and/or done with reckless disregard for the rights of the Plaintiff.

80. The actions on part of the Defendant are part of a plan, practice or pattern of discrimination which may affect others who are similarly situated to the Plaintiff.

    WHEREFORE, Plaintiff requests the following:

    a.    that the Court enter a judgment declaring the Defendant's actions to be unlawful and violative of the Title VII of the Civil Rights Acts of 1964 and 1991, as amended;

    b.    that the Court award the Plaintiff compensatory and punitive damages as a result of the Defendant violation of the Civil Rights Act of 1991;

    c.    that the Court award the Plaintiff pre-judgment and post judgment interest from the date of the discrimination;

    d.    that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

    e.    that the Court grant the Plaintiff such additional relief as may be just and proper.

    JURY TRIAL DEMANDED

## COUNT III:

## TITLE VII – RACIALLY HOSTILE WORK ENVIRONMENT

81. Plaintiff incorporates by reference Paragraphs 1 through 80 as though fully set forth at length herein.

82. As described hereinbefore above, Plaintiff was subjected to a racially hostile work environment in that he was subjected to inappropriate racial comments based on his race, Caucasian, and the race of his wife and family members, African-American, as more fully described hereinbefore above, and forced to work with the employee that made the inappropriate racial comments.

83. Furthermore, as more fully described hereinbefore above, Plaintiff believes, and therefore avers, that he was subjected to a hostile work environment based on his race, Caucasian, and the race of his wife, African-American.

84. As a direct result of the Defendant's discriminatory actions and violations of Title VII of the Civil Rights Act of 1964, and The Civil Rights Act of 1991, the Plaintiff has incurred counsel fees and other costs in pursuing his legal rights.

85. Additionally, the Plaintiff has suffered emotional, psychological, and physical distress, inconvenience, suffering, loss of reputation, humiliation and embarrassment as a direct result of the Defendant's discriminatory conduct, as described hereinbefore above.

86. The actions of the Defendant, through its employees, were intentional, willful and deliberate and/or done with reckless disregard for the rights of the Plaintiff.

87. The actions on part of the Defendant are part of a plan, practice or pattern of discrimination which may affect others who are similarly situated to the Plaintiff.

WHEREFORE, Plaintiff requests the following:

a. that the Court enter a judgment declaring the Defendant's actions to be unlawful and violative of the Title VII of the Civil Rights Acts of 1964 and 1991, as amended;

b. that the Court award the Plaintiff compensatory and punitive damages as a result of the Defendant violation of the Civil Rights Act of 1991;

c. that the Court award the Plaintiff pre-judgment and post judgment interest from the date of the discrimination;

d. that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

e. that the Court grant the Plaintiff such additional relief as may be just and proper.

JURY TRIAL DEMANDED

COUNT IV:

TITLE VII - RETALIATION

88. Plaintiff incorporates by reference Paragraphs 1 through 87 as though fully set forth at length herein.

89. As more fully described hereinbefore above, Plaintiff was retaliated against for engaging in protected activity, to wit, making complaints to the Defendant about the racially hostile work environment, sexually hostile work environment, and/or the discrimination against the Plaintiff based on his race and/or sex, as more fully described hereinbefore above.

90. As more fully described hereinbefore above, Plaintiff was retaliated against when Defendant attempted to threaten its officer to charge Plaintiff with a crime, despite lack of evidence, as more fully described hereinbefore above.

91. As a direct result of Defendant's discriminatory actions, and in violation of Title VII, Plaintiff has and/or will incur counsel fees and other costs in pursuing his legal rights. Plaintiff

has also suffered from emotional distress, inconvenience, humiliation, defamation of character and stress.

92. The actions on the part of the Defendant, through its employees, were intentional and willful and/or done with a reckless disregard of the Plaintiff.

WHEREFORE, Plaintiff requests the following:

a. that the Court enter a judgment declaring the Defendant's actions to be unlawful and violative of the Title VII of the Civil Rights Acts of 1964 and 1991, as amended;

b. that the Court award the Plaintiff compensatory and punitive damages as a result of the Defendant violation of the Civil Rights Act of 1991;

c. that the Court award the Plaintiff pre-judgment and post judgment interest from the date of the discrimination and retaliation;

d. that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

e. that the Court grant the Plaintiff such additional relief as may be just and proper.

JURY TRIAL DEMANDED

COUNT V:

PENNSYLVANIA HUMAN RELATIONS ACT

93. Plaintiff incorporates Paragraphs 1 through 92 as though fully set forth at length herein.

94. This is an action arising under the provisions of Pennsylvania law, to wit, Title 43 P.S. Section 951, *et seq*. (The "Pennsylvania Human Relations Act") and this Court has, and should exercise, pendent jurisdiction over the same because the cause of action complained of in this Count arises out of the same facts, events and circumstances as the other counts and therefore judicial economy and fairness to the parties dictate that this count be brought in the same Complaint.

95. As described hereinbefore above, the Defendant discriminated against the Plaintiff based on his race and/or his sex and subjected Plaintiff to a racially hostile work environment and/or sexually hostile work environment.

56. By discriminating against the Plaintiff without just cause or legal excuse and solely because of his race and/or sex by permitting the discrimination against the Plaintiff as aforementioned, the Defendant has violated the provisions of Title 43 P.S. Section 955 which prohibits discrimination based upon race and/or sex with respect to compensation for, continuation in and tenure of, employment as well as prohibiting the aiding and abetting of such discrimination.

57. As a direct result of the Defendant's discriminatory actions and violations of the PHRA, Plaintiff has incurred counsel fees and other costs in pursuing his legal rights.  The Plaintiff has also suffered from and continues to suffer emotional distress, inconvenience, humiliation, defamation of character, loss of standing among his peers and stress.

58. As more fully set forth hereinabove, the Plaintiff has suffered, directly and solely as a result of the Defendant's discriminatory actions, great pecuniary loss and damage, as well as pain, suffering, inconvenience, damage to Plaintiff's reputation, and other damages which, together with the forgoing may be permanent in nature.  Plaintiff now suffers these damages, and will continue to suffer the same for the indefinite future.

59. The actions on the part of the Defendant, through its employees, were intentional and willful and/or done with a reckless disregard of the Plaintiff.

    WHEREFORE, Plaintiff requests the following:

    a.    that the Court enter a judgment declaring the Defendant's actions to be unlawful and violative the PHRA

b.  that the Court award the Plaintiff compensatory and punitive damages as a result of the Defendant's actions being unlawful and violative of the PHRA;

c.  that the Court award the Plaintiff pre-judgement and post-judgement interest from the date of the discrimination;

d.  that the Court award the Plaintiff reasonable attorney's fees and costs of this action; and

e.  that the Court grant the Plaintiff such additional relief as may be just and proper.

JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
jsansone@joelsansonelaw.com
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
Amanda N. Shields, Esquire
PA ID No. 334025
*Counsel for Plaintiff*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: December 15, 2025