IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC FUSCO,<br><br>*Plaintiff*,<br><br>v.<br><br>CITY OF CLAIRTON,<br><br>*Defendant*. | Civil Action No. 2:25-cv-1952<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Eric Fusco ("Fusco") initiated this action against his employer, Defendant City of Clairton ("Clairton"), alleging sex discrimination, sexually hostile work environment, racially hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq*. He also brings claims of sex discrimination and sexually hostile work environment under 42 U.S.C. § 1983. (ECF No. 14). Clairton filed a motion to dismiss. (ECF No. 16). For the following reasons, the motion will be granted.

## I. FACTUAL BACKGROUND

Fusco, a Caucasian male, has been employed by Clairton in the Public Works Department since on or about September 6, 2006. His current position is that of operations supervisor. (ECF No. 14, p. 3).

On July 1, 2019, Clairton hired a Caucasian female employee, Penelope Bell ("Bell"), for the position of general laborer in the Public Works Department. According to Fusco, Bell "did not have, and does not have, the necessary qualifications, training, and experience for the

position of general laborer." (*Id.*). Despite all the other laborers in his department being required to have a commercial drivers' license ("CDL"), Bell did not have one, continues to not have one, and it is required to have one in order to operate some equipment used by the Public Works Department. Fusco contends that members of the Public Works Department, including him, were instructed by Clairton to treat Bell more favorably than male employees because she was female. Furthermore, he contends that Clairton failed to reprimand or otherwise discipline Bell for several actions, including: damaging Defendant's salt truck and plow while on duty; failing to report an accident in which she was involved while on duty using Clairton's equipment; hitting Fusco's wife's vehicle with Clairton's lift truck; initiating a verbal altercation with two African-American citizens; engaging in sexual relations with another employee while on duty; being insubordinate to her superiors, including Fusco; and making inappropriate racial comments to Fusco. (*Id.* at 3-4).

When Fusco did not assign Bell to operate certain equipment for which she lacked the necessary skills and training, Bell complained to Clairton, and Fusco was then directed to allow Bell to operate the equipment. (*Id.* at 4). In October 2021, Clairton hired an outside agency to train Bell and two other employees on operating equipment. Approximately two weeks after the start of Bell's training, the outside agency reported to Clairton that Bell lacked the necessary skills and qualifications to operate certain equipment. Bell did not pass the training by the outside agency. (*Id.*).

In February 2024, Bell made disparaging posts about Fusco on Facebook. Consequently, on February 26, 2024, Fusco held a staff meeting with his department to discuss the issue. During the meeting, Bell became hostile, leaned over Fusco while he was sitting down, and began to scream in his face, which caused her to spit in his face. Bell also clapped her hands in

front of Fusco's face as she yelled. When asked why she was behaving as such, Bell responded, "I'm just acting like those black bitches you deal with. If I act like that, maybe you can relate to me." Fusco believed Bell to be referencing his wife, who is African-American, and his African-American family members. At some point, Bell also stated that she was protected and could not be fired from her job. After the meeting, Fusco reported Bell's conduct and statement to Clairton's Mayor Richard Lattanzi ("Lattanzi"). Bell was never reprimanded or disciplined. (*Id.* at 5).

On or about June 7, 2024, Fusco was called to a meeting with Borough Manager Howard Bednar ("Bednar") and Solicitor Deron Gabriel ("Gabriel") and informed that Bell filed a complaint against him. Bell was apparently in possession of an inaudible recording from the February 26, 2024, meeting, and she claimed that Fusco called her the "Special Olympics." Fusco denied Bell's allegation as patently false and noted that she did not have his consent to record the meeting. (*Id.* at 6). Fusco lodged a verbal complaint about Bell's racial statement at the February 26, 2024, meeting. Fusco was then told by Gabriel that Clairton wanted the issue to "go away." (*Id.* at 6-7).

That same day, Bell filed a police report alleging that Fusco had slashed her tires. Bell was interviewed by a police officer and that interaction was recorded on the police officer's bodycam. During the interview, Bell admitted to having a sexual relationship with another employee while on the job and admitted to recording Fusco without his consent on multiple occasions. Fusco was notified of Bell's statements and reported them to Clairton. Fusco also filed a criminal complaint against Bell for recording him without his consent. Fusco alleges that Clairton Councilwoman Lee Lasich ("Lasich") and Gabriel confronted the police officer

involved in Bell's report and pressured the officer to charge Fusco with slashing Bell's tires. (*Id.* at 7).

On or about July 22, 2024, Lasich threatened to terminate Fusco for responding to a tree cutting order by another councilmember. During this interaction, Lasich also told Fusco to leave Bell alone. (*Id.* at 8).

On or about July 31, 2024, Bell was subjected to a *Loudermill* hearing by Clairton. Bell initially denied all of the accusations against her. However, after testimony from other individuals, Bell admitted to several accusations, including but not limited to, engaging in sexual relations with another employee while on the job. Nevertheless, Clairton did not terminate, reprimand, and/or otherwise discipline Bell for her conduct. (*Id.*)

Fusco's attorney sent Clairton a July 31, 2024, cease-and-desist letter recounting what Fusco believed to be a hostile work environment. In August 2024, Fusco made another complaint to Clairton about the sexually and racially hostile work environment caused by Bell. Lattanzi responded that he did not believe Bell's February 26, 2024, comments were racist and that her hostile actions, including but not limited to, screaming at Fusco and clapping in her face, were not of significance because Fusco was male and Bell was female. On or about August 5, 2024, all members of the Public Works Department, except Bell, signed a written complaint addressed to Clairton officials voicing concerns about the sexually and racially hostile work environment created by Bell and the illegal recordings made by Bell. Clairton took no action. Then, when Fusco again complained to Clairton in November 2024, of the sexually and racially

hostile work environment in his department caused by Bell, Lasich expressed to Clairton's code enforcement officer that Fusco's complaints would be ignored. (*Id.* at 8-9).[1]

## II. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must

---

[1] As the Court may take notice of matters of public record, it notes that Bell brought claims for sex and age discrimination, hostile work environment, civil rights violations, and several state law torts arising from her employment in the Public Works Department against Clairton, Duane Ringgold ("Ringgold"), and Fusco at Case No. 2:25-cv-01161 before the Court's colleague, the Honorable Nora Barry Fischer. On August 5, 2026, Fusco's and Clairton's motions to dismiss, as well as Ringgold's motion for judgment on the pleadings, were granted. Judge Fischer dismissed all claims in Bell's amended complaint with prejudice as to all defendants. Since there was no other basis for Judge Fischer to assert jurisdiction, she declined to exercise supplemental jurisdiction over Ringgold's remaining state-law claims, and his counterclaims against Bell and crossclaim against the Clairton were dismissed without prejudice. (Case 2:25-cv-01161, ECF Nos. 79 and 80). What remains pending before Judge Fischer are matters related to Bell's counsel's representation and whether her pleadings violated Pennsylvania Rules of Professional Conduct 3.3 ("Candor Toward the Tribunal") and 1.1 ("Competence"), as well as Federal Rule of Civil Procedure 11(b), if Judge Fischer should issue sanctions for such conduct.

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## III. ANALYSIS

### A. Discrimination and Retaliation Claims under Title VII and the PHRA.

Title VII prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448–49 (3d Cir. 2015); 42 U.S.C. § 2000e-2(a)(1). Likewise, the PHRA makes it unlawful for any employer to "refuse to hire or employ or contract with, or to bar or to discharge from employment [an] individual ... or to otherwise discriminate against such individual ... with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract" on the basis of "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability ...." 43 P.S. § 955(a).[2] Generally, a plaintiff in an employment discrimination action may establish a prima facie case of discrimination either through direct evidence, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985), or in the absence of direct evidence of disparate treatment, based on circumstantial evidence through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its

[2] Discrimination under Title VII and the PHRA are substantially similar, and Pennsylvania courts interpret the PHRA consistent with Title VII. *Weston v. Commw. of Pa*, 251 F.3d 420, 425 n. 3 (3d Cir. 2001), *overruled on other grounds*.

progeny.[3] While "the elements of that prima facie case will vary with different factual situations, ... at root, the plaintiff's initial burden is to show adverse actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 276 (3d Cir. 2024) (cleaned up).

To establish a prima facie case of employment discrimination, Fusco must show that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. As to a retaliation claim, the three elements that are required for a prima facie case are: protected activity, an adverse employment action, and a causal connection between the two. *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 & n.14 (3d Cir. 2010); *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318 (3d Cir. 2008).[4] Clairton argues that Fusco

---

[3] Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without any inference or presumption. *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994). Direct evidence is also described as overt or explicit evidence that directly reflects a discriminatory bias that is causally related to the adverse employment decision. *Glanzman v. Metropolitan Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004). If the trier of fact must infer discrimination from the employer's remarks or actions, then the evidence is not direct evidence of discrimination. *Torre*, 42 F.3d at 829. Indirect or circumstantial evidence of discrimination is evidence that creates an inference of discrimination. When an employee relies on indirect evidence, claims under Title VII are analyzed using the three-step framework of *McDonnell Douglas*. Under the *McDonnell Douglas* paradigm, an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802–04. If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." *Id.*

[4] To plead a claim under Title VII, a plaintiff need not allege each element necessary to establish a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has

has not adequately pled an adverse employment action and, therefore, his discrimination and retaliation claims must be dismissed. The Court concurs.

An employee "must show some harm respecting an identifiable term or condition of employment" to establish an adverse employment action. *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). "[I]n other words, that the employer treated the employee 'worse' because of a protected characteristic." *Peifer*, 106 F.4th at 277 (quoting *Muldrow*, 601 U.S. at 355). Here, Fusco was neither demoted, transferred, nor terminated. He retains his position as operations supervisor of the Public Works Department. He has not suffered a negative change in any term, condition, or privilege of employment, such as receiving less pay or benefits. He does not allege that he was subjected to or received any discipline. Nothing is pled that Fusco was unable to carry out the work of the Public Works Department.

Nevertheless, Fusco argues in response to Clairton's motion that the terms and conditions of his employment changed in that "he was effectively unable to supervise [ ] Bell, who was repeatedly engaging in egregious, harmful, and illegal behavior." (ECF No. 21, p. 14). This was not pled in his amended complaint. (ECF No. 14). Assuming it had been, Fusco has not come forth with factual averments showing that the inability to supervise Bell resulted in a significant change in his employment status. Federal courts are not in the business of mandating work assignments or daily staffing practices. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 527 (3d Cir. 1992) (noting that "barring discrimination, a company has the right to make

---

never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."), and *id.* at 515 ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination."). Rather, at the pleading stage, a plaintiff must allege facts that provide fair notice of a plaintiff's claims and demonstrate a plausible right to relief. *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); FED. R. CIV. P. 8(a)(2) (requiring that complaints contain a "short and plain statement showing that the pleader is entitled to relief")

business judgments on employee status" and that without evidence casting doubt on an employer's articulated reasons for an employment decision, courts "will not interfere in an otherwise valid management decision" (citation omitted)). Fusco was apparently given a directive by Clairton not to supervise Bell. But, as currently pled, Fusco was able to supervise her to some extent in that he "did not assign [Bell] to operate certain equipment for which she lacked the necessary skills and training" (ECF No. 14, ¶ 19), and he held a staff meeting, which Bell attended, to discuss his issue with Bell's Facebook posting (*id.* at ¶¶ 24-25). As pled, nothing about the inability to supervise Bell changed the contours of Fusco's duties or the work of the Public Works Department. He had one less employee to supervise. His responsibilities and oversight of the Public Works Department did not change. Further, nothing is pled that Clairton treated Fusco worse.

The Court holds that Clairton's deviation from the normal supervisory chain-of-command for one employee (Bell) in the Public Works Department, while still affording the same work opportunities to Fusco, does not delineate a cognizable adverse employment action to Fusco. "[N]ot everything that makes an employee unhappy qualifies as an adverse employment action, for otherwise even trivial employment actions would form the basis" for suits. *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp.3d 214, 241 (D. N.J. 2015) (citing *Cortes v. Univ. of Medicine and Dentistry of New Jersey*, 391 F. Supp.2d 298, 312 (D.N.J. 2005) (internal quotations, citations, and amendments omitted)). While Fusco may disagree with how Clairton chose to handle Bell and dislike the intrusion and micro-managing of one employee in his department, there is nothing pled to support a conclusion that not supervising Bell constitutes an adverse employment action against him.

For these reasons, Count I (Title VII – Sex Discrimination), Count IV (Title VII – Retaliation), and Count VII (PHRA) will be dismissed with prejudice.

**B. Hostile Work Environment Claims Under Title VII and PHRA.**

Title VII prohibits harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotations omitted). "Title VII is not intended as a 'general civility code,' and requires that 'conduct must be extreme' to constitute the kind of 'change in the terms and conditions of employment' the statute was intended to target." *Walls v. Abington Surgical Ctr.*, 758 F. Supp. 3d 376, 388 (E.D. Pa. 2024) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "[T]he purview of Title VII does not extend to all workplace difficulties, even where the conduct at issue may be crass and unwarranted." *Selvato v. SEPTA*, 143 F. Supp. 3d 257, 266 (E.D. Pa. 2015). To raise a hostile work environment claim against an employer on a theory of sexual or racial harassment, a plaintiff must establish that (1) he suffered intentional discrimination because of his sex or race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in similar circumstances; and (5) the existence of respondeat superior liability. *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

To analyze a hostile work environment claim, the Court looks to "the overall scenario" rather than "individual incidents." *Qin v. Vertex, Inc.*, 100 F.4th 458, 471 (3d Cir. 2024) (citation modified). The Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance." *Id.* (citation modified) (citation omitted). And "[w]hen the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable." *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citation omitted). "[A]n employer may be directly liable for non-supervisory co-worker sexual harassment only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment." *Id.* at 104-05.

Here, Bell made "disparaging" posts about Fusco on Facebook. At a February 26, 2024, staff meeting, she became hostile, leaned over Fusco while he was sitting down, and began to scream in his face, which caused her to spit in his face. Bell also clapped her hands in front of Plaintiff's face as she yelled. When asked why she was behaving as such, Bell responded, "I'm just acting like those black bitches you deal with. If I act like that, maybe you can relate to me." Fusco also claims that Bell recorded him on that date without his consent as well as on other unidentified occasions. Lastly, he takes issue with Bell filing criminal charges against him claiming that he slashed her tires.

As to the one comment made by Bell during the February 26, 2024, staff meeting and her recording of the meeting, while it was offensive to Fusco, it is certainly not severe enough to create a hostile work environment. *Qin*, 100 F.4th at 471; *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 182 (3d Cir. 2020) (rejecting that overtly racial statements such as "Hey Arabia Nights" or "Hey Big Egypt" were severe enough to support a hostile work environment claim); *Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 25, 30 (3d Cir. 2010) (holding that defendant's "regularly [making] comments about the size of his genitalia and about the intimate details of his sexual relationships," referring to women as "bitches," and telling "of a colleague

frequenting 'titty bars' " did not rise to the level of "severe or pervasive" harassment). Notably, Fusco actually pled that Clairton took action against Bell for this incident – she was subjected to a July 31, 2024, *Loudermill* hearing by Clairton. While he may disagree with the ultimate outcome of that hearing, it is clear that Clairton responded to the February 26, 2024, incident, and the events of that day do not amount to "pervasive" harassment against Fusco.

Fusco has failed to otherwise plead a hostile work environment. There are no allegations that Bell made any other discriminatory comments to Fusco aside from those on February 26, 2024, such that they were "so pervasive that they altered the working environment." *Ali*, 957 F.3d at 182; *see also Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (holding that seven "obnoxious, unprofessional, and inappropriate" comments were spread out over a span of over three-and-a-half years and did not constitute severe or pervasive harassment). While Fusco alludes to Bell recording him on other occasions without his consent, he fails to plead how this created a hostile work environment. He does not explain when such recordings occurred, how frequently recording occurred, what statements were made during the recordings, or why the recordings amount to sexual or racial harassment. Nothing is pled that Bell's recordings were given to Clairton, that Fusco was confronted with the recordings, or that these recordings somehow altered the terms and conditions of his employment. As to Fusco's belief that Bell fabricated criminal charges against him for slashing her tires, it is not alleged that what occurred is based on any workplace event. This type of off-work allegedly harassing conduct by a co-worker, which is not pled to have been racially or sexually discriminatory, is not something that comprises a discriminatory employment practice by Clairton.

For these reasons, Count II (Title VII – Sexually Hostile Work Environment), Count III (Title VII – Racially Hostile Work Environment), and Count VII (PHRA) will be dismissed with prejudice.

**C. Section 1983 Claims.**

Through § 1983, Fusco alleges that Clairton has violated the Equal Protection Clause to the Fourteenth Amendment of the United States Constitution.[5] Section 1983 provides a procedural vehicle for private plaintiffs to enforce the Constitution when they suffer violations under color of state law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). A plaintiff must "plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). As set out in *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal body is a "person" who can be liable under § 1983. But a municipality can only be liable for its own actions; it cannot be vicariously liable for the actions of its employees. A municipal body acts through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* This includes unconstitutional practices which are "so permanent and well settled as to constitute a custom or usage with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 117 (1988), as well as acts by the municipal body itself, *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007), and a failure to train demonstrating "deliberate indifference" towards the constitutional violations caused by its employees, *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

---

[5] An equal protection claim arises when an individual contends that he is receiving different treatment than that received by other individuals similarly situated. *Kuhar v. Greensburg–Salem Sch. Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir. 1980).

At Count V, Fusco brings a *Monell* equal protection sex discrimination claim that Clairton, "through its policy-makers, adopted and enacted a policy and/or procedure of treating [ ] Bell more favorably than other employees of Defendant's Public Works Department, including but not limited to Plaintiff, solely based on [ ] Bell's sex, female." (ECF No. 14, p. 18). At Count VI, Fusco brings a *Monell* equal protective hostile work environment claim that Clairton "adopted and enacted a policy and/or procedure of treating [ ] Bell more favorably than other employees of Defendant's Public Works Department" and it "created a working environment that was abusive and/or hostile to the Defendant's male employees, including Plaintiff." (*Id.* at 20). For both claims, he alleges:

> Plaintiff suffered severe and pervasive harassment and discrimination, including being illegally recorded by [ ] Bell on multiple occasions without his consent; [ ] Bell's racist statement and conduct, which was deemed permissible by Mayor Lattanzi solely because of [ ] Bell's sex; being falsely accused of making a derogatory statement towards [ ] Bell by Defendant's solicitor; being falsely accused of slashing [ ] Bell's tires; Councilwoman Lasich and Defendant's solicitor attempted to have him criminally charged for Ms. Bell's aforementioned false accusation; being unjustifiably threatened with termination by Councilwoman Lasich….

(Id. at 18, 20). According to Fusco, he was informed that Clairton would ignore all complaints made regarding Bell, which foreclosed any avenue for him to complain. (*Id.*).

First, the Court would note that Fusco has not pled the existence of an actual policy. A "policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman* v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotation omitted). Fusco has not alleged any official policy or edict. In short, he has not alleged that any employee acted according to any Clairton policy, practice, or custom as is required under *Monell*. *See, e.g., McGovern v. City of Phila.*, 554 F.3d 114, 121 (3d Cir. 2009) (finding district court properly

dismissed a plaintiff's claim of race discrimination under *Monell* when plaintiff failed to allege that city employees acted pursuant to any official policy or custom.

Second, Plaintiff's § 1983 equal protection claims are analyzed under the same framework as his Title VII sex discrimination and hostile work environment claims. *See Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 426–28 (3d Cir. 2020); *see also Holt v. Pennsylvania*, 683 F. App'x 151, 160 (3d Cir. 2017) ("And because of the overlap between Title VII claims and constitutional discrimination claims, we have applied Title VII caselaw to equal protection claims."); *Devine v. Pittsburgh Bd. of Educ.*, No. 13-220, 2013 WL 4648393, at *5 (W.D. Pa. Aug. 29, 2013) ("Race discrimination claims under § 1983 and Title VII are typically analyzed together."). For the same reasons set forth above with respect to the Title VII sex discrimination and hostile work environment claims, Fusco has failed to set forth a prima facie case of sex discrimination and hostile work environment under the Equal Protection Clause. There is no constitutional deprivation from which a § 1983 claim can flow.

Fusco's § 1983 claims (Counts V and VI) will be dismissed for failure to state a claim. No leave to amend will be permitted as the Court finds it to be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2024) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

## IV. CONCLUSION

For these reasons, by Order of Court to follow, Clairton's motion to dismiss will be granted.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: 9/2/26